**KENDRA, INC., Appellant,**

v.

**WACO HOTEL SUPPLY COMPANY, Inc.,**
**Appellee.**

No. 4066.

Court of Civil Appeals of Texas.

Waco.

Nov. 29, 1962.

Rehearing Denied Dec. 20, 1962.

Naman, Howell, Smith & Chase, George Chase, Waco, for appellant.

Sleeper, Boynton, Burleson, Williams & Johnston, B. R. Sleeper, Waco, for appellee.

WILSON, Justice.

Appellant Kendra alleged appellee defrauded it by issuing fictitious invoices, representing merchandise it did not purchase, in order that Kendra's manager and vice-president, Williamson, could obtain checks from Kendra's bookkeeper to pay for merchandise appellee had sold to Williamson and delivered to his home. In a non-jury trial a take-nothing judgment was rendered.

Kendra's points, in the main, challenge the judgment and the court's findings of fact as having no evidence to support them, or as being against the great weight and preponderance of the evidence.

The findings attacked are that Williamson was the alter ego of Kendra; that the merchandise in question was sold to, and Williamson had authority to purchase it for Kendra; that appellee received no money in excess of that owed by Kendra for merchandise sold to it; that there was "no proximate cause between" appellee's conduct and damage to Kendra; that at the time the fictitious invoices were prepared Kendra owed appellee the amount represented by the invoices and hence, Kendra suffered no damage thereby; that no corporate official of appellee participated in preparation of the invoices; that payment of the invoices was made by Kendra at the sole direction of Williamson, who was duly authorized to make payment and issue checks; that Kendra's loss was suffered as a result of placing Williamson in the position of manager and vice-president and that there was no prearranged plan between Williamson and any corporate official of appellee concerning the matters in dispute. The court concluded Kendra was bound by Williamson's conduct, which occasioned its loss.

Appellant concedes with candor that there is no direct evidence that appellee connived with Williamson to defraud appellant, but urges the circumstances establish this as the only reasonable inference which can be drawn.

Williamson was general manager and vice-president of Kendra, Inc., a manufacturer. Its president, who resided in Florida and was abroad during the time in question, vested Williamson with express "authority to purchase merchandise for" the corporation; and told appellee's salesman Williamson was the general manager of the business, "in full charge." No limitation was placed on his authority. For several years Kendra had purchased, by Williamson's order, small equipment items from appellee, which was engaged in selling hotel and restaurant supplies. It sold no residential equipment.

Shortly after Williamson became general manager he called appellee's salesman to the factory and told him that the number of Kendra's employees had increased to the point he desired to replace a portable catering service with a snack bar, counter, range, waffle iron, toaster and ice box. The salesman made a lay-out of the planned facility, and Williamson gave him an order on Kendra's account, for a two-unit commercial waffle iron and heavy-duty, 24-hour, 10-speed mixer, a commercial type toaster and grill, directing that these be delivered to his residence for storage until the fixtures were built in the factory. Kendra then had more than 100 employees. The salesman testified that when he complied with Williamson's request to make a layout for the snack bar, and discussed its arrangement, he "got an order for the range right then." Williamson stated he would also store this heavy-duty commercial stove in his residence garage until he completed the counter and fixtures in the factory, and that he would notify appellee's salesman when he was ready for installation. Williamson directed that the range be charged to his personal account.

No payment having been received by appellee after invoices and statements covering this merchandise were mailed, the salesman called on Williamson for payment. The latter stated he had lost some invoices and was unable to reconcile the account. He instructed the salesman to have invoices prepared and delivered as he instructed; he would "get it straightened up." Williamson listed other merchandise to be shown on the new invoices as having been sold to Kendra, and showing total charges equal to the balance then due for the equipment actually sold and delivered. The salesman took Williamson's list to appellee's bookkeeper, from whom he obtained new invoices showing Kendra purchases as directed by Williamson. No entry of such charges was made on appellee's books. Williamson approved these and obtained Kendra's checks from its bookkeeper in payment. Williamson's conduct was detected, he was discharged, "skipped out" and was arrested in Kentucky.

The salesman and appellee's secretary testified Williamson "was the Kendra Company as far as we were concerned." Kendra's president testified he did not know the purpose for which Williamson ordered the equipment which appellee delivered; and the record does not negative a reasonable inference that it was actually ordered for Kendra's use. There is no record showing that Williamson actually converted the equipment to his personal use, whether or not it was installed or used in his residence, or as to whether Kendra finally obtained possession. The president testified he had seen the items at Williamson's home and they were not "received at Kendra."

While a portion of the record is susceptible of construction to the effect that appellee's secretary participated in preparation of the invoices, in that she answered questions inquiring whether "you" prepared fictitious invoices in connection with what appellee did, there is positive testimony that the invoices were prepared by appellee's bookkeeper without the secretary's knowledge or participation.

Appellant insists that if the evidence does not show appellee knowingly and actively participated in fraud, it was charged with notice of Williamson's lack of authority because of the unusual circumstance "that the merchandise was to be delivered to Williamson's home, rather than appellant's place of business, as had always been done before", and that the range was charged to Williamson's personal account. A portion of the charge for the range had been paid by Kendra's check, issuance of which had been obtained by Williamson before the fictitious invoices were delivered.

We are unable to say there was no evidence supporting the material findings which support the judgment, or that they are contrary to the overwhelming preponderance of the evidence. All of appellant's points are overruled. Affirmed.